## NATIONAL CENTER ON MISSING AND EXPLOITED CHILDREN, Plaintiff,

### v.

### Constance HORNER, Director, United States Office of Personnel Management, Defendant.

### Civ. A. No. 88–2886.

United States District Court, District of Columbia.

Nov. 7, 1988.

B. Michael Rauh, Benjamin L. Zelenko, Landis, Cohen, Rauh and Zelenko, Washington, D.C., for plaintiff.

Mark Nagle, Asst. U.S. Atty., Washington, D.C., for defendant.

## OPINION

SPORKIN, District Judge.

Plaintiff, National Center on Missing and Exploited Children (NCMEC), seeks to participate in the fall 1988 Combined Federal Campaign (CFC) for the National Capital Area and other unspecified local CFCs. The United States Office for Personnel Management (OPM), which administers CFC, denied NCMEC's application for admission to the National Capital Area Campaign based on a finding that NCMEC failed to satisfy one of the requirements set forth in the relevant CFC regulations. *See* 5 C.F.R. Sec. 950.203(b)(9) (1988).[1]

NCMEC now brings this action seeking a preliminary injunction that would permit its participation in the 1988 CFC campaign.[2] Because I find that the rejection of NCMEC's application is inconsistent with, and contrary to, the relevant CFC regulations, a preliminary injunction will be granted.

## I. BACKGROUND

The CFC is an annual campaign through which charitable organizations solicit contributions from federal employees. Participating organizations are listed in a "Contributor's Brochure" that is circulated

---

1. Section 950.203 states, in pertinent part:
   (b) To qualify for inclusion on the list of organizations judged to be eligible to participate on a national basis, an organization must submit annually to the Director:
     * * * * * *

   (9) A statement affirming that ... it has received at least 50 percent of its total support and revenues from sources other than the Federal government or at least 20 percent of

   its total support and revenue from voluntary contributions from the general public.
   5 C.F.R. Sec. 950.203 (1988).

2. At the time this action was filed, the 1988 CFC campaign had already begun. Nevertheless, NCMEC seeks to be included in the campaign through distribution of an addendum and/or as a charitable organization eligible to share in any undesignated contributions.

throughout the federal government. Federal employees who choose to contribute may designate the charity (or charities) that is to be the recipient of the contribution. Contributions can be made through periodic payroll deductions or in a lump sum.[3]

The eligibility of a charitable organization for participation in CFC is determined on a yearly basis by either of two methods. Administration of both is overseen by OPM. First, a national organization may apply to OPM for inclusion on the national eligibility list. *See id.* Sec. 950.202. CFC regulations require that an organization seeking national eligibility "[m]ust demonstrate that it provides or conducts real services, benefits, assistance, or program activities, in 15 or more states...." *Id.* Sec. 950.202(a). Organizations determined by OPM to be nationally eligible are automatically included in each of the 534 domestic CFCs and the CFC Overseas campaign.

Second, an organization may apply to any Local Federal Coordinating Committee (LFCC), *see id.* Sec. 950.104, for listing in the local portion of the CFC brochure. To qualify for local listing, an organization must demonstrate, *inter alia,* that it maintains a staffed facility that is open to the general public, at least 15 hours a week, in the local campaign community. *See id.* Sec. 950.204(b)(3).

NCMEC is an IRS-certified charity. Established in 1984, NCMEC acts as a resource, education and training center for federal, state and local government agencies dealing with the problems of missing and exploited children. For example, NCMEC carries on certain programs on behalf of the United States Department of Justice's Office of Juvenile Justice and Delinquency Programs. Affidavit of David L. Shapiro (Shapiro Affidavit), para. 3. Further, NCMEC operates a toll-free national telephone hotline to assist in reuniting missing children with their families.

Since 1984, NCMEC has participated in CFC. Shapiro Affidavit, para. 8. NCMEC intended to participate in the fall 1988 CFC program. Accordingly, NCMEC applied to the National Capital Area LFCC. *See* Memorandum in Support of Plaintiff's Motion for Preliminary Injunction (Plaintiff's Memorandum), Attachment Tab A, Letter Dated July 8, 1988. NCMEC regarded admission to the National Capital Area LFCC as a first step in seeking admission to other LFCCs as well as the Overseas campaign.

The National Capital Area LFCC denied NCMEC's application on the ground that it failed to satisfy one of the nine "public accountability standards," namely, CFC regulation 950.203(b)(9). *See* Plaintiff's Memorandum, Attachment Tab B, Letter Dated July 26, 1988 (citing 5 C.F.R. Sec. 950.203(b)(9)). This denial not only prevented NCMEC's participation in the National Capital Area CFC but, in effect, excluded NCMEC from participation in any of the LFCCs and the Overseas campaign. NCMEC sought review by OPM. OPM upheld the denial of the application. *See* Plaintiff's Memorandum, Attachment Tab E, Letter Dated August 22, 1988.[4]

Specifically, regulation 950.203(b)(9) requires that an organization seeking inclusion in CFC "[submit annually] a statement affirming that ... it has received ... at least 20 percent of its total support and revenue from voluntary contributions from the general public." 5 C.F.R. Sec. 950.203(b)(9). OPM based its denial on a determination that NCMEC received less than 20 percent of its support and revenue from contributions from the general public. NCMEC disputes OPM's determination and argues that, in 1987, 24.9 percent of its operating revenues and expenses came from public support.

---

**3.** For a more detailed discussion of the history of CFC, see *Cornelius v. NAACP Legal Defense and Educational Fund, Inc.,* 473 U.S. 788, 790–93, 105 S.Ct. 3439, 3443–44, 87 L.Ed.2d 567 (1985); *Planned Parenthood of Metropolitan Washington, D.C. v. Horner,* 691 F.Supp. 449 (D.D.C.1988).

**4.** Procedures and standards for appealing a CFC eligibility determination are set forth at 5 C.F.R. Sec. 950.205 (1988).

The basis of this dispute is clear. Almost half of the funds that NCMEC considers to be derived from the public were in fact provided by the National Endowment for the Protection of Children (Endowment).

The Endowment and NCMEC are related organizations. The Endowment was created in 1985 by NCMEC's Board of Directors for the primary purpose of raising and managing funds to support NCMEC's programs. *See* Shapiro Affidavit, para. 4. Nevertheless, most of NCMEC's public contributions are received directly by NCMEC. NCMEC deposits with the Endowment any excess contributions it might receive. In turn, the Endowment funnels funds back to NCMEC to support its yearly operating expenses. *See id.* at para. 5. At all times, the money held by the Endowment represents contributions from the public at large. *See id.* at para. 6.

In 1987, the relevant year in this case, the Endowment provided NCMEC with $330,732, i.e. 11.5 percent of NCMEC's 1987 operating budget. NCMEC argues that the $330,732 should be counted as "voluntary contributions from the general public." 5 C.F.R. Sec. 950.203(b)(9). In contrast, OPM has refused to include the funding provided by the Endowment as "voluntary contributions from the general public." *Id.* Thus, whether NCMEC is eligible for participation in CFC hinges on the interpretation to be given to "contributions from the general public." *Id.*

## II. DISCUSSION

A party seeking preliminary injunctive relief must establish: (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable harm if preliminary relief is denied; (3) that the granting of an injunction will not injure other interested parties; and (4) that public interest favors granting injunctive relief. *See Population Institute v. McPherson*, 797 F.2d 1062, 1078 (D.C.Cir.1986); *Wisconsin Gas Co. v. F.E.R.C.*, 758 F.2d 669, 673–74 (D.C.Cir. 1985); *Foundation on Economic Trends*

*v. Heckler*, 756 F.2d 143, 151 (D.C.Cir. 1985).

## A. SUCCESS ON THE MERITS

NCMEC's argument, simply put, is that they have complied with the accountability standards set forth in CFC regulation 950.-203(b)(9). NCMEC notes that, in pertinent part, 950.203 states:

(B) To qualify for inclusion on the list of organizations judged eligible to participate ... an organization must submit annually to the Director:

\*    \*    \*    \*    \*    \*

(9) A statement affirming that ... it has received ... at least 20 percent of its total support and revenue from voluntary contributions from the general public.

5 C.F.R. Sec. 950.203(b)(9) (1988). Since the funds provided by the Endowment are comprised of contributions from the general public (many of which were received by NCMEC), NCMEC believes these funds should be included under 950.203(b)(9).

Defendant argues that NCMEC has overlooked relevant language in the regulations. Specifically, defendant points to the prefatory language in Subsection (b) which states that an applicant must submit "annually" evidence that it complies with all the enumerated public accountability standards. Defendant argues that this language is intended to indicate that an organization is only permitted to include contributions received the year immediately preceding any year in which it seeks to participate in CFC. Both parties admit that a majority of funds provided by the Endowment were not received within the preceding year. Therefore, defendant argues that NCMEC is not an eligible organization under Section 950.203.

The language of the regulation is clearly ambiguous. OPM is correct in its assertion that in years past CFC regulations required the applicant to demonstrate that the contributions at issue were received in the immediately preceding year.[5] However,

---

**5.** The 1984 regulation stated that a charity must demonstrate it has received "at least 20 percent

of its revenues from direct and/or indirect contributions in the year immediately preceding

that requirement has been remitted in its current regulations. *Compare* 5 C.F.R. Sec. 950.405(a)(iii) (1987) *with* 5 C.F.R. Sec. 950.203(b) (1988) (omitting the phrase "immediately preceding ... year").

The regulation now requires an *annual submission;* however, it does not require that the submission cover only those contributions received within the last year.[6] This distinction is simple and essential. Again, an eligible charity must file annually, not file an application which reports support received in the preceding year.[7] If the defendant wants to limit consideration of contributions to those made in the prior year, it should rewrite the regulation in clear and unambiguous language.

Next, NCMEC argues that "voluntary contributions from the general public," 5 C.F.R. Sec. 950.203(b)(9) (1988), may include both direct and indirect contributions. Legislative history convincingly supports NCMEC's interpretation. The statute which provides for the revision of the CFC regulations directed that "any requirements for eligibility to receive contributions through the Combined Federal Campaign shall ... remain the same as the criteria in the 1984 regulations, except as provided in this section." Pub.L. No. 100–202, Sec. 618(b)(1)(B), 101 Stat. 1329 *et seq.* Further, the Conference Report specifically states that any changes permitted in accountability standards were intended to "protect federal employees against fraud and *not to serve as a means of excluding groups that otherwise would be eligible.*" H.R. Report 100–498, 100th Cong., 1st Sess., at 1173 (1987) (emphasis added).

The 1984 provision that was replaced by Section 950.203(b)(9), permitted both direct and indirect contributions in calculating the 20 percent contribution figure.[8] To read the language of Section 950.203(b)(9) to include only direct contributions would do what Congress forbade, i.e. "exclud[e] groups that otherwise would be eligible." *See Planned Parenthood of Metropolitan Washington, D.C., Inc. v. Horner,* 691 F.Supp. at 453, 454, 455 (D.D.C.1988) ("the 1984 regulations were to stay in place except for those changes—and *only* those changes—specifically identified by Congress"). Therefore, NCMEC is correct in its assertion that "voluntary contributions from the general public," 5 C.F.R. Sec. 950.203(b)(9), may include both direct and indirect contributions.

Finally, defendant argues that the contributions received by NCMEC from the Endowment do not constitute "indirect contributions" under the regulation. Because the 1988 regulations are silent as to direct versus indirect contributions, defendant urges this Court to look to the 1984 regulations for guidance. Section 950.101(b)(6) of the 1984 regulations defines "indirect contributions" as follows:

'Indirect contributions' shall mean gifts, in cash or donated in-kind material, given to the spending health and welfare organizations by another health and welfare organization, *but not transfers, dues or other funds from affiliated organizations* or government, which are not to be considered as 'public contributions.'

5 C.F.R. Sec. 950.101(b)(6) (1984) (emphasis added). Defendant argues that the Endowment is an "affiliated organization" as de-

---

any year in which it seeks to participate in the Combined Federal Campaigns." 5 C.F.R. Sec. 950.405(a)(iii) (1987).

6. NCMEC is prepared to argue that its annual receipt of funds from the Endowment would even satisfy the interpretation urged by defendant. The gist of NCMEC's argument is that the relevant donation is from the Endowment to NCMEC *not* from the general public to NCMEC (or the Endowment). Since the Endowment provided the funds at issue within the preceding year, NCMEC believes it satisfies defendant's interpretation of the 1984 and 1988 regulations.

7. OPM argues that deleting "the temporal requirement of compliance on an annual basis, would only serve to muddle the standards...." Defendant's Supplemental Memorandum in Opposition to Plaintiff's Motion For A Preliminary Injunction at 3. I agree with OPM in so far as I find the standards "muddled." However, I do not find the "temporal requirement" of the type urged by the defendant in the regulations. Further, if OPM finds that the goals it has sought to achieve through these regulations have not been reached, the solution is revising the regulations not denying the plaintiff its rightful relief.

8. *See supra* note 5.

scribed under this 1984 provision. Therefore, if defendant's argument were accepted, NCMEC would be precluded from including the funds received by the Endowment as permissible "indirect contributions" under 950.203(b)(9).

I am not convinced that the provision cited by defendant should be applied to NCMEC and the Endowment for three reasons. First, this provision was not included in the current regulation. Defendant has failed to adequately explain why this fact should be overlooked by the Court. Second, it is unclear to me exactly what was intended by the emphasized language. It is conceivable that the provision sought to prohibit a large organization from supporting, through its own treasury, the activities of far flung affiliated organizations. Clearly this is not the case here. Third, for the past three years, during which time the 1984 provision cited by OPM was in effect, NCMEC and the Endowment operated in a fashion identical to that which OPM now questions. And, in each of these years, NCMEC's application was approved by OPM or a subordinate LFCC.

In light of these considerations and Congress' directive to OPM, *see Planned Parenthood*, 691 F.Supp. at 453, 454, 455 No. 88-1751 at 10, 12, 15, I am unwilling to permit the interpretation of the 1984 provision in a fashion inconsistent with prior application. Therefore, I find that the 1984 provision, Sec. 950.101(b)(6), does not preclude NCMEC's inclusion of funds received from an organization such as the Endowment as "voluntary contributions from the general public." 5 C.F.R. Sec. 950.-203(b)(9).

Based on this inquiry, OPM's action in denying NCMEC's application for participation in the National Capital Area CFC is inconsistent with, and contrary to, CFC regulation 950.203(b)(9). Therefore, I find that NCMEC has demonstrated a substantial likelihood of success on the merits.

## B. IRREPARABLE HARM

NCMEC has clearly demonstrated that failure to grant a preliminary injunction will cause serious injury to its organization. Last year, NCMEC received approximately $166,000 through CFC contributions. Shapiro Affidavit, para. 8. CFC is the only means by which NCMEC can solicit funds from federal employees. Therefore, any monies lost are irreplaceable. Further, defendant does not refute NCMEC's contention that such loss constitutes irreparable harm.[9] Clearly, NCMEC has demonstrated that irreparable harm will result if a preliminary injunction is not granted.

## C. HARM TO OTHERS

OPM asserts that a parade of horribles will flow from granting relief. OPM envisions that the granting of the requested relief will require, at the very least, the reprinting and redistribution of new brochures for the National Capital Area CFC. OPM indicates that reprinting and redistribution costs will be approximately $95,-000. *See* Defendant's Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction at 8. Further, OPM argues that granting a preliminary injunction would disrupt ongoing campaigns and, therefore, result in harm to participating charitable organizations.

OPM fails to understand that the ongoing CFCs need not be stopped cold in order to provide equitable relief to NCMEC. NCMEC has itself indicated a variety of options open to the Court. Included among these are the distribution of an addendum which would provide a description and relevant information about NCMEC and the possibility of permitting NCMEC to share in undesignated contributions. Therefore, I find that an appropriately crafted Order will not injure other interested parties.

## D. PUBLIC INTEREST

The public interest is undoubtedly served by NCMEC's continued participation in

---

9. Rather, defendant argues that the devastation which will be visited upon CFCs across the country if injunctive relief is granted outweighs any irreparable harm NCMEC will suffer. *See* Defendant's Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction at 7. This issue is addressed below.

CFC. OPM admits that "[t]he value of Plaintiff's work has been recognized by the U.S. Department of Justice through the funding it provides Plaintiff." Defendant's Supplemental Memorandum in Opposition to Plaintiff's Motion For a Preliminary Injunction at 4.

OPM has failed to recognize that relief can be granted without requiring the CFCs now in progress to stop cold. Further, OPM has failed to recognize that the public interest is not served by frustrating a qualified charitable organization's attempt legitimately to participate in CFC. Therefore, I find that the public interest favors appropriate injunctive relief.

## III. RELIEF

Because of the current status of the various CFCs, I find it is necessary to hold a hearing to determine exactly what type of injunctive relief would best protect the rights of plaintiff without unduly disrupting the ongoing campaigns.

## IV. CONCLUSION

Based on this inquiry, I am constrained to grant the preliminary injunction. Here is an organization that has been consistent in the way it has been operating since its inception in 1984. Up to this point, no objection to its operation has been raised by OPM. We know that the organization is a highly regarded institution and performs an extremely valuable community service. Indeed, it even receives funds from the Justice Department. Such an organization is entitled to be governed by regulations that are clear and unambiguous.

It is conceded that Congress prohibited OPM from raising the qualifying standards for participating organizations above those standards that were in existence in 1984. Yet, despite this fact, the defendant is now urging that the plaintiff be treated in a different way than it has been in the past. It is incumbent upon the defendant to write regulations that are clear and not confusing if it desires to apply them in the way that it has in this case.

Because of all of the foregoing, I find that: (1) the plaintiff has demonstrated the likelihood it will succeed on the merits in this litigation; (2) the failure to grant a preliminary injunction would result in irreparable harm to the plaintiff; (3) no other interested parties will be unduly harmed by the granting of a preliminary injunction; and (4) the public interest clearly favors the granting of this injunction.

Accordingly, plaintiff-NCMEC's motion for a preliminary injunction is granted. The exact nature of the relief to be granted shall be the subject of a hearing to be held in Court on November 9, 1988.

## APPENDIX

## STIPULATED STATEMENT TO BE DISTRIBUTED

It is hereby stipulated and agreed upon by the parties that the following statement should be distributed to all federal employees in accordance with the Opinion issued November 7, 1988:

### "1988 CFC Notice"

"A U.S. District Court has determined that the National Center on Missing and Exploited Children (NCMEC) was wrongfully excluded from the 1988 National Capital Area Combined Federal Campaign. Accordingly, it has ordered that NCMEC participate as an eligible voluntary agency.

"The National Center on Missing and Exploited Children may be designated by you through December 15, 1988, as a recipient for the 1988 campaign by pledge card or direct contribution. If you have already made a designation by payroll deduction or direct contribution, you may make another to the Center. Information concerning NCMEC is set forth below:

(202) 634–9821

The National Center on Missing and Exploited Children serves as a clearinghouse of information on missing and exploited children. The Center maintains a toll-free hotline.

(25%)

"The Government may appeal the court's decision, and in the event the decision is reversed, funds designated for NCMEC will be placed in the undesignated pool."

SO ORDERED this 10th day of November, 1988.

/s/ Stanley Sporkin
STANLEY SPORKIN
United States District Judge

FOR PLAINTIFF NATIONAL CENTER ON MISSING AND EXPLOITED CHILDREN:

Landis, Cohen, Rauh and Zelenko

By /s/ Benjamin L. Zelenko
B. Michael Rauh, Esq.
Benjamin L. Zelenko, Esq.
1019 Nineteenth Street, N.W.
Suite 500
Washington, D.C. 20036

FOR DEFENDANT CONSTANCE HORNER, DIRECTOR, UNITED STATES OFFICE OF PERSONNEL MANAGEMENT:

United States Attorney

By /s/ Mark Nagle
Mark Nagle, Esq., AUSA
555 Fourth Street, N.W.
Washington, D.C. 20001.